1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEVEN ANTHONY CLEMENS,

11            Petitioner,                No. 2:08-cv-2588 KJN P

12        vs.

13   JIM MACDONALD, Warden,
     La Palma Correctional Center,
14   MATTHEW CATE, Secretary,
     California Department of Corrections
15   and Rehabilitation,[1]

16            Respondents.              ORDER

17   _____/

18   I.  INTRODUCTION

19            Petitioner is a California state prisoner, currently incarcerated in Arizona.

20   Petitioner is proceeding in forma pauperis and without counsel with a petition for writ of habeas

21   corpus filed pursuant to 28 U.S.C. § 2254.  The petition, filed June 9, 2008, challenges

22   petitioner's 2006 conviction for kidnapping and other offenses, for which he is serving a ten-year

23

24        [1]  The names of the respondents are corrected to reflect petitioner's incarceration in the La
     Palma Correctional Center in Eloy, Arizona, as well as the continuing jurisdiction of the
     California Department of Corrections and Rehabilitation.  Rule 2(a), Rules Governing Section
25   2254 Cases in the United States District Courts; Stanley v. California Supreme Court, 21 F.3d
     359, 360 (9th Cir. 1994).  The term "respondent" utilized in the body of this order is intended to
26   refer to both respondents, who are jointly represented by the California Attorney General.

prison sentence.  On June 28, 2010, after the merits of the petition were fully briefed (respondent filed an answer on March 5, 2009, petitioner filed his traverse on April 8, 2009), petitioner filed a motion for leave to amend the petition.  The court ordered additional briefing, which has now been completed.

Both parties have consented to the jurisdiction of the magistrate judge for all purposes, pursuant to 28 U.S.C. § 636(c) and Local Rule 305(a).  (Dkt. Nos. 10, 14, 15.)

After careful consideration of the record and the parties' briefing, the undersigned denies petitioner's motion for leave to file an amended habeas petition, and denies the original petition.

II.  LEGAL STANDARDS

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

2

1    indistinguishable from a decision of the Supreme Court and nevertheless arrives at different

2    result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06

3    (2000)).

4             Under the "unreasonable application" clause of section 2254(d)(1), a federal

5    habeas court may grant the writ if the state court identifies the correct governing legal principle

6    from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

7    prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

8    simply because that court concludes in its independent judgment that the relevant state-court

9    decision applied clearly established federal law erroneously or incorrectly.  Rather, that

10   application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

11   (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

12   question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

13   omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief

14   so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

15   Harrington v. Richter, 131 S. Ct. 770, 786 (Jan. 19, 2011).

16            The court looks to the last reasoned state court decision as the basis for the state

17   court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned

18   decision, "and the state court has denied relief, it may be presumed that the state court

19   adjudicated the claim on the merits in the absence of any indication or state-law procedural

20   principles to the contrary."  Harrington, 131 S. Ct. at 784-85.  That presumption may be

21   overcome by a showing that "there is reason to think some other explanation for the state court's

22   decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

23            Where the state court reaches a decision on the merits but provides no reasoning

24   to support its conclusion, the federal court conducts an independent review of the record.

25   "Independent review of the record is not de novo review of the constitutional issue, but rather,

26   the only method by which we can determine whether a silent state court decision is objectively

3

1    unreasonable." <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

2    decision is available, the habeas petitioner has the burden of "showing there was no reasonable

3    basis for the state court to deny relief." <u>Harrington</u>, 131 S. Ct. at 784.  "[A] habeas court must

4    determine what arguments or theories supported or, . . . could have supported, the state court's

5    decision; and then it must ask whether it is possible fairminded jurists could disagree that those

6    arguments or theories are inconsistent with the holding in a prior decision of this Court." <u>Id.</u> at

7    786.

8    III.  <u>BACKGROUND</u>

9            Petitioner was tried pursuant to a consolidated information combining Superior

10   Court Case Numbers 05-2395 and 06-534.  (Clerk's Transcript ("CT") at 238-43.)  The first-filed

11   complaint, in Case No. 05-2395, was premised on petitioner's alleged conduct on December 22,

12   2005.  (CT at 1-5, 75-80.)  The second-filed complaint, in Case No. 06-534, was premised on

13   petitioner's alleged conduct on an unidentified date in November 2005.  (<u>Id.</u> at 89-93.)  Both

14   cases involved the same alleged victim, "L.S."  Statements made by L.S. pursuant to the

15   investigation of the December 22, 2005 incident led to the charges based upon the November

16   2005 conduct.  The prosecution's motion to consolidate these cases, filed March 9, 2006 (<u>id.</u> at

17   99-103), was granted on March 20, 2006 (<u>id.</u> at 193), and the consolidated information was filed

18   on March 21, 2006 (<u>id.</u> at 238-43).  Nine counts were alleged in the consolidated information.[2]

19           The September 10, 2007 opinion of the California Court of Appeal (Third

20   Appellate District) contains a procedural and factual summary of petitioner's conviction and

21   _____

22           [2]  All statutory references therein are to the California Penal Code.  Based on the alleged
     conduct of December 22, 2005, petitioner was charged with kidnapping (§ 207(a)) (Count 1);
23   false imprisonment by violence (§ 236) (Count 2); corporal injury to a cohabitant (§ 273.5(a))
     (Count 3); and vandalism (§ 594(a)) (Count 7).  Based on the alleged conduct of November
24   2005, petitioner was charged with forcible rape (§ 261(a)(2)) (Count 4); assault with intent to
     commit rape (§ 220) (Count 5); sexual battery by restraint (§ 243.4(a)) (Count 6); and two counts
25   of battery (§ 243(e)(1)) (Counts 8 and 9).  (CT 238-41.)  The information further alleged that
     petitioner had three prior felony convictions (§ 1203(e)(4)), and one prior prison term (§
26   667.5(b)).  (CT 241.)

                                                    4

sentence.  After independently reviewing the record, the undersigned finds the summary to be

accurate and adopts it below:

> [On March 29, 2006,] [a] jury convicted defendant Steven Anthony
> Clemens of one count of felony kidnapping (Pen. Code, § 207,
> subd. (a)),[3] one count of corporal injury to a cohabitant (§ 273.5,
> subd. (a)), one count of sexual battery by restraint (§ 243.4, subd.
> (a)), and one count of misdemeanor vandalism (§ 594, subd. (a)).[4]
>
> Defendant appeals from a judgment [entered May 25, 2006]
> sentencing him to state prison for an aggregate term of 10 years.[5]

FACTUAL BACKGROUND

> . . . On December 22, 2005, defendant and the victim, L.S., were at
> defendant's home in Dunsmuir, where they had previously lived
> together.  Both defendant and L.S. testified that there was an
> altercation between them that evening.  However, that is where the
> similarity in their testimony ends.
>
> L.S. testified that she attempted to get away from defendant by
> getting into her car and locking the doors.  Enraged, defendant
> shattered one of the car windows, pulled her out of the car, and
> forced her into the house.  When she got into the house, she picked
> up a cell phone and started pushing the speed dial buttons to get
> help.  L.S. then recalled defendant "pulling" her, at which point she
> blacked out.  The next thing she remembered was awakening on
> the ground with her head bleeding.  While there were many "blank
> spots" in her memory, L.S. insisted that defendant's act of pulling
> her caused the injury.  She denied that she tripped or fainted.
>
> L.S. told interviewing officers on the night of the incident that
> defendant pulled her to the ground, that he pinned her down by
> sitting on top of her, and that she could feel blood rushing out of
> her head.  She thought she might have hit her head on a coffee
> table, and denied that she injured herself by tripping or falling.
>
> Blood was found on the coffee table and a deep blood stain was

---

[3]  "Undesignated statutory references are to the [California] Penal Code."  [Fn. 1 in
original text.]

[4]  Of these four counts on which petitioner was convicted, only one, sexual battery,
pertained to the alleged conduct in November 2005.

[5]  "The sentence consisted of an eight-year upper term for the kidnapping count, one year
consecutive for the sexual battery, and a one-year enhancement for a prior felony (§ 667.5, subd.
(b)). The court imposed a three-year midterm sentence for the corporal injury to cohabitant to run
concurrently."  [Fn. 2 in original text.]

1   found on the rug nearby. There was no blood anywhere else in the
    house. L.S.'s head wound required seven stitches to close.
2
    Taking the stand on his own behalf, defendant testified that the car
3   window was broken in an automobile accident. He also denied
    dragging L.S. into the house. He claimed that he was playing
4   music on the stereo when L.S. fell. He also stated that L.S. had
    stumbled over a rocking chair as she attacked him, causing her to
5   hit her head on a bookshelf over the wood stove.[6] Defendant was
    impeached by his own statement to officers who arrived at the
6   scene shortly after the incident. Defendant told the officers that
    L.S. had hit herself on the head with a board in order to get him
7   into trouble, because he was breaking up with her.

8   The jury also heard evidence about a previous incident in
    November 2005 when defendant, who had been drinking, climbed
9   on top of L.S. and forced her to have sex with him, while putting
    his hands around her throat and choking her.
10

11  People v. Clemens, 2007 WL 2584998, *1 (Cal. App. 2007) (also set forth in Lodged Document

12  ("Ldgd. Doc.") No. 6).[7]

13          In his appeal, filed October 10, 2006, petitioner asserted the following two claims:

14  (1) that there was insufficient evidence to support petitioner's corporal injury to a cohabitant

15  conviction (§ 273.5); and (2) that the trial court committed error under Cunningham v.

16  California, 549 U.S. 270 (2007), by imposing the upper sentencing term on petitioner's

17  kidnapping conviction (§ 207). (Ldgd. Doc. No. 1.)

18          In the reasoned decision quoted above, and discussed further below, the California

19  Court of Appeal, on September 10, 2007, rejected each of petitioner's contentions. (Ldgd. Doc.

20  No. 6 (App. Ct. Case No. CO52936, reviewing Super. Ct. Case No. 05-2395).) On October 16,

21  2007, petitioner raised the same two issues in a petition for review filed in the California

22  Supreme Court. (Ldgd. Doc. No. 8.) On November 28, 2007, the California Supreme Court

23  _____

24          [6] "The bookshelf in question was attached to the wall about 'five or six feet' off the
    ground. L.S. testified she is five feet one and one-half inches tall." [Fn. 4 in original text.]
25
            [7] The title page to this lodged document is incorrectly designated "Appellant's
26  Supplemental Reply Brief," which is itself set forth in Lodged Document No. 7.

1    summarily denied review.[8] (Ldgd. Doc. No. 9.)

2            Petitioner filed the instant federal petition for writ of habeas corpus on June 9,

3    2008, again asserting both claims presented on direct review to the Court of Appeal and the

4    California Supreme Court.  Respondent concedes that both claims raised in the instant petition

5    were timely exhausted in the state courts.  (Dkt. No. 16 at 3.)

6            Petitioner now seeks to amend his federal habeas petition to add eight additional

7    claims raised in multiple petitions for writs of habeas corpus subsequently filed in the state

8    courts.  (Dkt. No. 30 (Motion).)  Respondent contends that petitioner is precluded from making

9    any amendment to his petition, based on the statute of limitations and petitioner's failure to

10    exhaust state court remedies.  (Dkt. No. 39 (Opposition).)  Respondent has assisted the court in

11    identifying and providing copies of each of the underlying petitions.  (See Dkt. No. 39 at 6-13,

12    and additional lodged documents (Dkt. No. 40).)  Pursuant to order of this court (Dkt. No. 43),

13    respondent personally served petitioner with copies of the newly lodged documents (Dkt. No.

14    44), and petitioner filed a reply to respondent's opposition to petitioner's motion to amend (Dkt.

15    No. 46 (Reply)).

16   IV.  DISCUSSION

17       A.  Motion for Appointment of Counsel

18            Petitioner seeks, without further explanation, appointment of counsel to assist him

19    in the matters now pending before the court.  (Dkt. No. 30 at 22.)[9]  There exists no absolute right

20    to appointment of counsel in habeas proceedings.  See Nevius v. Sumner, 105 F.3d 453, 460 (9th

21    Cir. 1996).  However, 18 U.S.C. § 3006A authorizes the appointment of counsel at any stage of a

22    habeas proceeding "if the interests of justice so require."  See Rule 8(c), Fed. R. Governing

23

24          [8]  In his petition for writ of habeas corpus, petitioner incorrectly states that the California

25   Supreme Court denied review on December 11, 2007.  (Dkt. No. 1 at 2.)  Petitioner attached to
    his petition the correct (November 28, 2007) denial of review.  (Id. at 8.)

26          [9]  The referenced pages reflect the court's electronic pagination.

1 § 2254 Cases.  "Indigent state prisoners applying for habeas corpus relief are not entitled to

2 appointed counsel unless the circumstances of a particular case indicate that appointed counsel is

3 necessary to prevent due process violations."  Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir.

4 1986) (citations omitted).  In the present case, the court finds that neither the interests of justice

5 nor independent due process considerations require the appointment of counsel at this time.

6 Accordingly, petitioner's motion is denied.

7          B.  Motion for Leave to File Amended Habeas Petition

8                Petitioner moves to amend his federal habeas petition to add the following claims:

9 (1) petitioner's misdemeanor vandalism conviction was not supported by sufficient evidence; (2)

10 petitioner's sexual battery conviction was not supported by sufficient evidence; (3) the prosecutor

11 engaged in misconduct by threatening potential defense witnesses and misrepresenting facts in

12 his closing argument; (4) petitioner was denied a speedy trial; (5) petitioner's kidnapping

13 conviction was not supported by sufficient evidence; (6) the trial court improperly instructed the

14 jury on the asportation requirement for kidnapping; (7) the prosecution committed Brady error by

15 failing to disclose to petitioner the audiotape and transcript of the prosecutor's interview with the

16 victim; and (8) appellate counsel provided ineffective assistance by failing to investigate defense

17 counsel's alleged errors at trial.[10]  (See Motion (Dkt. No. 30 at 23-30), and Reply (Dkt. No. 46 at

18 2).)

19                Respondent opposes petitioner's motion to amend based on the contention that all

20 of petitioner's newly alleged claims are time-barred and, moreover, that proposed Claims 5 and 7

21 were not properly exhausted in the state courts.

22                For the following reasons, the court finds that petitioner's newly proposed claims

23 were untimely filed in this court and do not relate back to the filing date of petitioner's original

24 petition.

25          _____

26          [10]  These claims are recited in the sequence presented by petitioner, and retain their
numerical designation in the remainder of this order.

### 1. Chronology

The court's analysis requires the following chronology of petitioner's state habeas petitions and other pertinent dates:

**November 28, 2007:  California Supreme Court denied review of petitioner's direct appeal.**

**June 9, 2008:**          **Petitioner filed the instant federal petition for writ of habeas corpus** (Dkt. No. 1), claiming that insufficient evidence supports petitioner's corporal-injury-to-a-cohabitant conviction (Section 273.5 ), and that the trial court committed Cunningham error by imposing the upper sentencing term on petitioner's kidnapping conviction (Section 207).

**First State Petition**:  **Super. Ct. Case No. 08-1126**
July 17, 2008:[11]          Petition for writ of habeas corpus filed in the Superior Court,[12] alleging failure of prosecution to disclose audiotape and transcript of the District Attorney's ("DA") March 9, 2006 interview of the victim (Ldgd. Doc. No. 12);

August 4, 2008:            Petition summarily denied by Superior Court (Ldgd. Doc. No. 13).

**Second Petition**:      **App. Ct. Case No. CO59893**
September 9, 2008:       Petition for writ of habeas corpus filed in the Court of Appeal,[13] claiming Brady error based on the alleged failure of the prosecution to disclose information gathered by the first-arriving police officer, the emergency room doctor, and the DA's interview of the victim; also claiming that appellate counsel provided ineffective assistance by failing to investigate these alleged errors by trial counsel (Ldgd. Doc. No. 14 (duplicate at Ldgd. Doc. No. 10));

September 18, 2008:     Petition summarily denied by Court of Appeal (Ldgd. Doc. No. 15 (duplicate at Ldgd. Doc. No. 11)).

**Third Petition**:        **Super. Ct. Case No. 08-1898**

---

[11]  Where appropriate, petitioner has been accorded the benefit of the "mailbox rule."  See Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts (filing date is date of deposit in institution's internal mailing system); see also Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) ("[t]he mailbox rule applies to federal and state petitions alike"). Additionally, when there is a conflict in pertinent dates, petitioner is given the benefit of the earlier date.  (See e.g. Dkt. No. 39 at 7 n.4 (conflicting dates on certificates of service).)

[12]  Unless otherwise noted, the "Superior Court" refers to the Superior Court of California, County of Siskiyou.

[13]  Unless otherwise noted, the "Court of Appeal" refers to the California Court of Appeal, Third Appellate District.

| November 17, 2008: | Petition for writ of habeas corpus filed in the Superior Court, alleging that the prosecutor engaged in misconduct by threatening potential defense witnesses and misrepresenting facts in his closing argument; that trial counsel provided ineffective assistance; that appellate counsel provided ineffective assistance by failing to reasonably investigate trial counsel's alleged errors at trial; and that the Court of Appeal violated petitioner's due process rights by failing to set forth petitioner's account of the underlying facts.  (Ldgd. Doc. No. 16); |
| --- | --- |
| December 8, 2008: | Petition summarily denied by Superior Court (Ldgd. Doc. No. 17). |

**Fourth Petition**:    **App. Ct. Case No. CO60860**

| January 13, 2009: | Petition for writ of habeas corpus filed in the Court of Appeal, attaching same brief presented in the Superior Court Case No. 08-1898 (Ldgd. Doc. No. 18); |
| --- | --- |
| January 22, 2009: | Petition summarily denied by Court of Appeal (Ldgd. Doc. No. 19). |

**Fifth Petition**:    **Cal. Supreme Court Case No. S170554**

| February 2, 2009: | Petition for review filed in the California Supreme Court, challenging Court of Appeal's denial of Case No. CO60860 (Ldgd. Doc. No. 20); |
| --- | --- |
| March 25, 2009: | Petition summarily denied by the California Supreme Court (Ldgd. Doc. No. 21). |

**Sixth Petition**:    **Cal. Supreme Court Case No. S170534**

| February 10, 2009: | Petition for writ of habeas corpus filed in the California Supreme Court, claiming that appellate counsel provided ineffective assistance by failing to investigate trial counsel's alleged errors at trial, and that the prosecution committed <u>Brady</u> error by failing to disclose information gathered by the first-arriving police officer, the emergency room doctor, and the DA's interview of the victim (Ldgd. Doc. No.  22); |
| --- | --- |
| August 12, 2009: | Petition denied by the California Supreme Court, citing <u>In re Clark</u> (1993) 5 Cal. 4th 750 (Ldgd. Doc. No. 23). |

**Seventh Petition**:    **Super. Ct. Case No. 09-723**

| April 25, 2009: | Petition for writ of habeas corpus filed in the Superior Court, claiming that petitioner was denied a speedy trial and that the kidnapping conviction was not supported by sufficient evidence (Ldgd. Doc. No. 24); |
| --- | --- |
| May 18, 2009: | Petition summarily denied by Superior Court (Ldgd. Doc. No. 25). |

**Eighth Petition**:    **App. Ct. Case No. CO61957**

| April 30, 2009: | Petition for writ of habeas corpus filed in the Court of Appeal, based on the claims that the misdemeanor vandalism conviction was not supported |
| --- | --- |

1      by sufficient evidence; that the sexual battery conviction was not
           supported by sufficient evidence; and that the prosecutor engaged in
2      misconduct by threatening potential defense witnesses and misrepresenting
           facts in his closing argument (Ldgd. Doc. No. 26);

3

4    June 11, 2009:        Petition summarily denied by the Court of Appeal (Ldgd. Doc. No. 27).

5    **Ninth Petition**:      **Cal. Supreme Court Case No. S173961**
     June 17, 2009:      Petition for review filed in the California Supreme Court, challenging
6            Court of Appeal's denial of Case No. CO61957  (Ldgd. Doc. No. 28);

7    August 12, 2009:    Petition summarily denied by the California Supreme Court (Ldgd. Doc.
           No. 29).

8

9    **Tenth Petition:**      **App. Ct. Case No. CO62043**
     May 25, 2009:       Petition for writ of habeas corpus filed in the Court of Appeal, in which
10           petitioner claimed that he was denied a speedy trial and that his
           kidnapping conviction was not supported by sufficient evidence (Ldgd.
11           Doc. No. 30);

12   June 11, 2009:        Petition summarily denied by the Court of Appeal (Ldgd. Doc. No. 31).

13   **Eleventh Petition**:    **Cal. Supreme Court Case No. S174740**
     July 10, 2009:      Petition for writ of habeas corpus filed in the California Supreme Court,
14           claiming that the misdemeanor vandalism conviction was not supported by
           sufficient evidence; the sexual battery conviction was not supported by
15           sufficient evidence; and the prosecutor engaged in misconduct by
           threatening potential defense witnesses and misrepresenting the facts
16           (Ldgd. Doc. No. 32);

17   December 2, 2009:   Petition denied by the California Supreme Court, citing In re Clark (1993)
           5 Cal. 4th 750 (Ldgd. Doc. No. 33).

18

19   **Twelfth Petition**:    **Cal. Supreme Court Case No. S175364**
     August 6, 2009:     Petition for writ of habeas corpus filed in the California Supreme Court,
20           challenging the Court of Appeal's summary denial of petitioner's petition
           filed January 13, 2009 in App. Ct. Case No. CO60860, as a violation of
21           petitioner's due process rights (Ldgd. Doc. No. 34);

22   December 2, 2009:   Petition denied by the California Supreme Court, citing In re Clark (1993)
           5 Cal. 4th 750 (Ldgd. Doc. No. 35).

23

24   **Thirteenth Petition**:   **Super. Ct. Case No. 09-2322**
     November 28, 2009:   Petition for writ of habeas corpus filed in the Superior Court which
25           claimed that petitioner's sentence is unconstitutional because it is in
           excess of the maximum sentence intended by the Legislature; that
26           petitioner was illegally sentenced to involuntary servitude; that petitioner's

1    right to a speedy trial was violated; that the trial court's imposition of the
     upper sentencing term violated petitioner's right to a jury trial under
2    Cunningham; and that the trial court incompletely instructed the jury on
     the asportation requirement for a kidnapping conviction (Ldgd. Doc. No.
3    36);

4    January 8, 2010:      Petition summarily denied by the Superior Court (Ldgd. Doc. No. 37);

5    January 11, 2010:     Petition for writ of habeas corpus filed in the "Appellate Division" of the
                           Superior Court (Ldgd. Doc. No. 38);
6

7    January 25, 2010:     Notation on cover of "appellate petition" entered this date states: "No
                           action taken by court per Judge . . . Defendant cannot appeal HC writ
8                          denial/decision." (Id.)

9    **Fourteenth Petition**: **App. Ct. Case No. CO63927**
     January 15, 2010:     Petition for writ of habeas corpus filed in the Court of Appeal, setting
10                         forth the same claims presented and rejected in Super. Ct. Case No. 09-
                           2322 (Ldgd. Doc. No. 39);
11

12   January 28, 2010:     Petition summarily denied by the Court of Appeal (Ldgd. Doc. No. 40).

13   **Fifteenth Petition**:      **Cal. Supreme Court Case No. S180128**
     February 4, 2010:     Petition for review filed in the California Supreme Court, challenging the
14                         Court of Appeal's summary denial of petitioner's petition filed January 15,
                           2010 in App. Ct. Case No. CO63927 (Ldgd. Doc. No. 41);
15

16   March 18, 2010:       Petition summarily denied by the California Supreme Court (Ldgd. Doc.
                           No. 42).
17

18   **Sixteenth Petition**:      **Super. Ct. Case No. 10-293**
     February 6, 2010:     Petition for writ of habeas corpus filed in the Superior Court, claiming that
19                         petitioner's conviction rests on testimony then known to the prosecutor to
                           be perjured (Ldgd. Doc. No. 43);
20

21   April 7, 2010:        Petition summarily denied by the Superior Court (Ldgd. Doc. No. 44).

22   **Seventeenth Petition**: **Cal. App. Ct. Case No. CO64773**
     April 14, 2010:       Petition for writ of habeas corpus filed in the Court of Appeal, setting
23                         forth the same claims presented and rejected in Super. Ct. Case No. 10-
                           293 (Ldgd. Doc. No. 45);
24

25   April 22, 2010:       Petition summarily denied by the Court of Appeal (Ldgd. Doc. No. 46).

26

**June 15, 2010**:          **Ninth Circuit Court of Appeals** denied petitioner's application for leave to file a second or successive petition, filed April 27, 2010 (Case No. 10-71346), without prejudice to petitioner seeking leave to amend the instant federal petition.  (Dkt. No. 30 at 2.)  Petitioner's one-paragraph petition asserted generally that his conviction and sentence resulted in a fundamental miscarriage of justice.

**June 28, 2010**:          **Petitioner filed the instant motion** for leave to file an amended federal habeas petition.  (Dkt. No. 30.)

    2.  Statute of Limitations

Respondent contends that all of petitioner's proposed claims are time-barred by AEDPA's one-year statute of limitations.

AEDPA's one-year statute of limitations, set forth in 28 U.S.C. § 2244, applies to all habeas petitions filed by "a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  The limitation period commences on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).[14]

The limitation period is statutorily tolled during the pendency of "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim . . . ."  28 U.S.C. § 2244(d)(2).  A state petition is "properly filed," and qualifies for statutory tolling, if "its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  Artuz v. Bennett, 531 U.S. 4, 8 (2000).  Statutory tolling is not available for a state habeas petition that is "improperly filed" because untimely under California law.  Lakey v. Hickman, ___F.3d___, 2011 WL 451958, *3 (9th Cir. Feb. 10, 2011) (citing, inter alia, Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005)).  Thus, "[t]he period between a California lower court's denial of review and the filing of an original petition in a higher court is tolled—because it is part of a single round of habeas relief—so long as the filing

_____

[14]  Although the statute provides other means for assessing the commencement of the limitation period, 28 U.S.C. § 2244(d)(1), none are pertinent here.

1   is timely under California law." Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010).  However,

2   when, as here, a petitioner has filed multiple state habeas petitions, "[o]nly the time period during

3   which a round of habeas review is pending tolls the statute of limitation; periods between

4   different rounds of collateral attack are not tolled."[15]  Banjo, 614 F.3d at 968 (citation omitted).

5            Finally, the limitation period may be equitably tolled if petitioner establishes that

6   he diligently pursued his rights but some extraordinary circumstance stood in his way.  Raspberry

7   v. Garcia, 448 F.3d 1150, 1153 (9th Cir. 2006) (citations and internal quotation marks omitted).

8   "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his

9   rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented

10  timely filing. . . . The high threshold of extraordinary circumstances is necessary lest the

11  exceptions swallow the rule."  Lakey v. Hickman, supra, 2011 WL 451958 at *4 (citations and

12  internal quotation marks omitted).

13            a.  Statutory Tolling

14            In the present case, the California Supreme Court denied review of petitioner's

15  direct appeal on November 28, 2007.  That judgment became final ninety days later, on February

16  26, 2007, when the time for seeking review in the United States Supreme Court expired.  See

17  Rule 13, U.S. Supreme Court Rules; Tillema v. Long, 253 F.3d 494, 498 (9th Cir. 2001); Bowen

18  v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999).  Thus, AEDPA's one-year limitation period, as

19  applied to petitioner, commenced running on February 27, 2008.  28 U.S.C. § 2244(d)(1)(A);

20  Fed. R. Civ. P. 6(a) (excluding the day from which the period begins to run from the calculation

21

---

22      [15]  The Ninth Circuit has articulated a "two-part test to determine whether the period
between the denial of one petition and the filing of a second petition should be tolled.  First, we

23  ask whether the petitioner's subsequent petitions are limited to an elaboration of the facts relating
to the claims in the first petition.  If the petitions are not related, then the subsequent petition

24  constitutes a new round of collateral attack, and the time between them is not tolled.  If the
successive petition was attempting to correct deficiencies of a prior petition, however, then the

25  prisoner is still making "proper use of state court procedures," and habeas review is still pending.
Second, if the successive petition was not timely filed, the period between the petitions is not

26  tolled."  Banjo, 614 F. 3d at 968-69 (citations and internal quotation marks omitted).

1    of the time).  Absent statutory and/or equitable tolling, petitioner was required to file his federal

2    petition no later than February 27, 2009.  Petitioner easily met this deadline with respect to the

3    two exhausted claims contained in his original petition filed in this court on June 9, 2008.

4    However, the filing of petitioner's federal petition did not toll AEDPA's statute of limitations.

5    Duncan v. Walker, 533 U.S. 167, 181-82 (2001).  Thus, pursuant to petitioner's motion to amend

6    his federal habeas petition filed June 28, 2010, the court must evaluate the timeliness of

7    petitioner's several subsequently filed state habeas petitions and the claims raised therein.

8            Petitioner filed his first state habeas petition, and commenced the first "round" of

9    his petitions "up the ladder" of the state court system, Banjo, supra, 614 F.3d at 968, on July 17,

10   2008, 141 days after commencement of the statute of limitations.  (Super. Ct. Case No. 08-1126

11   (Ldgd. Doc. No. 12).)  That petition was limited to petitioner's claim that the prosecution

12   committed Brady error[16] by failing to produce to the defense the audiotape and transcript of the

13   prosecutor's March 9, 2006 interview with the victim, "L.S."  The claim is included in

14   petitioner's motion to amend his habeas petition as proposed Claim 7, discussed below.  That

15   petition was summarily denied on August 4, 2008.  (Ldgd. Doc. No. 13).  Petitioner again raised

16   this claim in his Court of Appeal petition filed September 9, 2008 (App. Ct. Case No. CO59893

17   (Ldgd. Doc. No. 14 at 3-4)), which was summarily denied on September 18, 2008 (Ldgd. Doc.

18   No. 15)).

19           In his Supreme Court petition filed February 10, 2009, petitioner again asserted

20   this claim.[17]  (Cal. Supreme Court Case No. S170534 (Ldgd. Doc. No. 22 at 3, 5-6).)  However,

21   the California Supreme Court denied this petition on August 12, 2009, with a citation to In re

22

23

24       [16]  See Brady v. Maryland, 373 U.S. 83 (1963) (prosecution's nondisclosure of material
     evidence constitutes a denial of due process).
25

26       [17]  The court addresses below respondent's contention that petitioner failed to raise this
     claim in the California Supreme Court.

1  <u>Clark</u> (1993) 5 Cal. 4th 750.[18]  (Ldgd. Doc. No. 23.)

2        <u>Clark</u> authorizes the California Supreme Court to summarily deny a petition for

3  writ of habeas corpus that is successive and/or untimely under California's "general

4  reasonableness standard" for assessing timeliness.  <u>Clark</u>, 5 Cal. 4th at 765 n.5; <u>see also</u> In re

5  <u>Robbins</u> (1998) 18 Cal. 4th 770, 780; <u>In re Gallego</u> (1998) 18 Cal. 4th 825, 833.  It is reasonable

6  to infer that the California Supreme Court found both problems beset petitioner's filing— not

7  only was this petitioner's second habeas petition filed in the California Supreme Court, but it was

8  filed nearly six months after the Court of Appeal issued the related underlying decision.

9  "Regardless of whether the California Supreme Court intended the <u>Clark</u> citation to emphasize

10  the 'untimely' rather than the 'successive' nature of the petition, the same result follows.  As the

11  state's high court made clear in <u>Clark</u>, '[a] successive petition presenting additional claims that

12  could have been presented in an earlier attack on the judgment is, of necessity, a delayed

13  petition.'"  <u>Evans v. Marshall</u>, 2009 WL 363741, *7 (C.D. Cal. 2009), quoting <u>Clark</u>, 5 Cal.4th at

14  770; <u>accord</u>, <u>Wall v. Adkins</u>, 2010 WL 3633001, *4 (C.D. Cal. 2010) (citing multiple cases).

15        The failure of petitioner to timely file his petition in the California Supreme Court

16  stopped the tolling of this round of petitions on the date of the Court of Appeal's decision,

17  September 18, 2008.  <u>Banjo</u>, at 968-69 (untimely successive petition does not toll the period

18  between its filing and the decision on the preceding petition).  Thus, as of September 18, 2008,

19  petitioner had used 141 days of the one-year limitation period.

20        As respondent concedes (Dkt. No. 39 at 18-19), petitioner thereafter initiated and

21  completed a second round of habeas petitions in the state court system.  This round, commenced

22  November 17, 2008 (Super. Ct. Case No. 08-1898 (Ldgd. Doc. No. 16)), was timely filed in the

23

24        [18]  Petitioner filed a duplicate petition in the California Supreme Court on August 6, 2009
   (Cal. Supreme Case No. S175364 (Ldgd. Doc. No. 34)), which was also denied with a citation to
25  <u>In re Clark</u>, <u>supra</u>, 5 Cal. 4th 750, on December 2, 2009 (Ldgd. Doc. No. 35).  For the reasons
   discussed herein, that petition was also improperly filed and cannot be relied upon to toll the
26  statute of limitations.

1   Court of Appeal (App. Ct. Case No. CO608060 (Ldgd. Doc. No. 18)), and in the California

2   Supreme Court (Cal. Supreme Court Case No. S170554 (Ldgd. Doc. No. 20)), where it was

3   denied on March 25, 2009 (Ldgd. Doc. No. 21), thus tolling the statute of limitations for the

4   entire period.  However, the 60-day period between September 18, 2008 (the Court of Appeal's

5   denial in petitioner's first round) and November 17, 2008 (commencement of petitioner's second

6   round), was not tolled, extending to 201 the number of days petitioner had used of his one-year

7   limitation period.

8          Thus, as of March 25, 2009, petitioner had used 201 days of the one-year

9   limitation period.

10         As noted by respondent (Dkt. No. 39 at 19-20), petitioner thereafter initiated a

11  third round of habeas petitions which he did not fully exhaust because he did not seek review by

12  the California Supreme Court.  That round, commenced April 25, 2009, in the Superior Court

13  (Super. Ct. Case No. 09-723 (Ldgd. Doc. No. 24)), and concluded June 11, 2009, by the Court of

14  Appeal's denial (App. Ct. Case No. CO62043 (Ldgd. Doc. No. 31)), tolled the statute of

15  limitations for the duration of that period.  However, the 31-day period between the end of

16  petitioner's second round and the commencement of his third round, from March 25, 2009, to

17  April 25, 2009, was not tolled, thereby extending to 232 the number of days petitioner had used

18  of his one-year limitation period.

19         Thus, as of June 11, 2009, petitioner had used 232 days of the one-year limitation

20  period.

21         Meanwhile, as respondent acknowledges (Dkt. No. 39 at 20-21), petitioner

22  commenced a fourth round of habeas petitions on April 30, 2009, in the Court of Appeal (App.

23  Ct. Case No. CO61957 (Ldgd. Doc. No. 26)), concluding with the California Supreme Court's

24  denial of review on August 12, 2009 (Cal. Supreme Court Case No. S173961 (Ldgd. Doc. No.

25  ////

26  ////

29)).[19]  The tolling that ended on June 11, 2009, with the conclusion of petitioner's third round of petitions, was therefore extended through August 12, 2009, at the conclusion of petitioner's fourth and overlapping round of petitions.

Thus, as of August 12, 2009, petitioner had still used 232 days of the one-year limitation period.

Petitioner initiated his fifth round of petitions on November 28, 2009 (Super. Ct. Case No. 09-2322 (Ldgd. Doc. No. 36)), timely filing in the Court of Appeal (App. Ct. Case No. CO63927 (Ldgd. Doc. No. 39)),[20] and in the California Supreme Court (Cal. Supreme Court Case No. S180128 (Ldgd. Doc. No. 41)).  The Supreme Court petition was denied on March 18, 2010 (Ldgd. Doc. No. 42), thus tolling the limitation period through that date.  However, the 108-day period between the conclusion of petitioner's fourth round on August 12, 2009, and the commencement of his fifth round on November 28, 2009, was not tolled.

Accordingly, as of March 18, 2010, petitioner had used 340 days of the one-year limitation period.

Meanwhile, on February 6, 2010, petitioner commenced his sixth and final round of petitions (Super. Ct. Case No. 10-293 (Ldgd. Doc. No. 43)), pursuing his claims through the Court of Appeal's denial on April 22, 2010 (Cal. App. Ct. Case No. CO64773 (Ldgd. Doc. No. 46)).  The overlap of these petitions with petitioner's fifth round petitions extended the tolling from March 18, 2010 (the end of petitioner's fifth round) through April 22, 2010 (the end of petitioner's sixth round).

Therefore, as of April 22, 2010, petitioner had still used 340 days of the one-year

---

[19]  Petitioner's duplicate petition filed in the California Supreme Court on July 10, 2009 (Cal. Supreme Case No. S174740), was denied with a citation to In re Clark, supra, 5 Cal. 4th 750; thus, because this petition was found improperly filed, the period pending its review cannot be used for interval tolling.

[20]  In California, the supreme court, courts of appeal, and superior courts all have original habeas corpus jurisdiction.  Cal. Const. art. VI, § 10.

1  limitation period.  Absent equitable tolling, petitioner had 15 days, or until Friday, May 7, 2010,

2  to seek leave to amend his federal habeas petition to add any new claims that he had fully

3  exhausted in the state courts.

4           Petitioner's April 27, 2010 application for leave to file a successive petition, filed

5  in the Ninth Circuit Court of Appeals, did not toll the statute of limitations.  Duncan v. Walker,

6  supra, 533 U.S. at 181-82.

7           Petitioner filed the instant motion for leave to file an amended federal habeas

8  petition on June 28, 2010, fifty-two (52) days past the statutory deadline of May 7, 2010.

9  Petitioner's motion is therefore untimely.

10          b.  Equitable Tolling

11          Equitable tolling is available "when extraordinary circumstances beyond a

12  prisoner's control make it impossible" to timely file the federal petition.  Espinoza-Matthews v.

13  California, 432 F.3d 1021, 1026 (9th Cir. 2005) (internal quotation marks and citations omitted).

14  "That determination is highly fact-dependent and [petitioner] bears the burden of showing that

15  equitable tolling is appropriate."  Id.  "A petitioner must show that his untimeliness was caused

16  by an external impediment and not by his own lack of diligence."  Bryant v. Arizona Attorney

17  General, 499 F.3d 1056, 1061 (9th Cir. 2007) (citing Roy v. Lampert, 465 F.3d 964, 973 (9th Cir.

18  2006)); see also Shannon v. Newland, 410 F.3d 1083, 1090 (9th Cir. 2005) (observing that in

19  each of the cases in which equitable tolling has been applied the requisite "extraordinary

20  circumstances" have been based on the "wrongful conduct" of another that "actually prevented

21  the prisoner from preparing or filing a timely habeas petition"); accord, Lakey v. Hickman, supra,

22  2011 WL 451958 at *4 .

23          Despite petitioner having been advised of respondent's arguments against

24  equitable tolling in this action, as set forth in respondent's opposition to petitioner's motion for

25  leave to amend, petitioner has made no showing of an extraordinary circumstance beyond his

26  control warranting such tolling.  Petitioner did not address the timing of his motion when he filed

1  it (Dkt. No. 30), and now states in his reply only that he has acted "with due diligence and in

2  good faith" (Dkt. No. 46 at 4).

3           The court finds, therefore, no basis for equitable tolling.

4           c.  Relation Back

5           Because petitioner's newly proposed claims were filed in this court outside the

6  statute of limitations, they may not be included in an amended petition unless they relate back to

7  the claims in the original petition.  Amendment of a pleading made after expiration of the statute

8  of limitations must assert "a claim or defense that arose out of the conduct, transaction, or

9  occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P.

10  15(c)(2).  This rule has been construed by the Supreme Court in habeas cases to require more

11  than "relation back" generally to petitioner's "trial conviction or sentence," but rather "the

12  existence of a common 'core of operative facts' uniting the original and newly asserted claims,"

13  that is, that "the claims added by amendment [must] arise from the same core facts as the timely

14  filed claims, and not . . . upon events separate in 'both time and type' from the originally raised

15  episodes."  Mayle v. Felix, 545 U.S. 644, 657, 659 (2005).

16           Only a fully exhausted claim may relate back to the original petition.  Respondent

17  contends that petitioner's proposed Claims 5 and 7 are barred for failure to exhaust state court

18  remedies.  (Dkt. No. 39 at 25, 24.)

19              i.  Exhaustion of State Court Remedies

20           "State habeas is not a stage 'subsequent' to federal habeas.  Just the opposite:

21  Petitioners must exhaust their claims in state court before seeking federal habeas relief.  See §

22  2254(b)(1)."  Harbison v. Bell, 129 S. Ct. 1481, 1488 (2009).  To satisfy the exhaustion

23  requirement, petitioner must have fairly presented his claim in the state courts in order to give

24  them the "opportunity to pass upon and correct alleged violations" of petitioner's rights.  Rose v.

25  Palmateer, 395 F.3d 1108, 1110 (9th Cir. 2005), quoting Baldwin v. Reese, 541 U.S. 27, 31

26  (2004) (internal quotation marks omitted).  The exhaustion doctrine is based on principles of

comity, by according the state courts the initial opportunity to correct the state's alleged federal constitutional error. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin, 541 U.S. at 29. A claim has been fairly presented when petitioner described in each of the state court proceedings both the operative facts and the federal legal theory on which the claim is based. Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Anderson v. Harless, 459 U.S. 4, 6 (1982); Weaver v. Thompson, 197 F.3d 359, 364 (9th Cir. 1999).

A federal district court may not entertain a petition for writ of habeas corpus unless the petitioner has exhausted state remedies with respect to each of the claims raised. Rose v. Lundy, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b)(1). Thus, a federal court may not permit amendment of a fully exhausted habeas petition to add an unexhausted claim, absent extraordinary circumstances that include sufficient time within the AEDPA statute of limitations for petitioner to fully exhaust, in state court, the unexhausted claims. See e.g., Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003), overruled on other grounds, Robbins v. Carey, 481 F.3d 1143 (9th Cir. 2007); Rhines v. Weber, 544 U.S. 269 (2005); King v. Ryan, 564 F.3d 1133 (9th Cir. 2009).

Respondent contends that petitioner failed to exhaust his state court remedies as to his proposed Claim 5, his assertion that his kidnapping conviction was not supported by sufficient evidence. The court's review of petitioner's state court filings demonstrates that petitioner failed to raise Claim 5 before the California Supreme Court. The claim was initially raised in petitioner's Superior Court petition filed April 25, 2009 (Super. Ct. Case No. 09-723 (Ldgd. Doc. No. 24 at 4)); then again in his petition filed May 25, 2009, in the Court of Appeal (App. Ct. Case No. CO62043 (Ldgd. Doc. No. 30 at 4)). Petitioner contends that he again raised this claim in his California Supreme Court petition filed June 19, 2009 (Cal. Supreme Court Case No. S173961 (Ldgd. Doc. No. 28)) (Dkt. No. 46 at 3); however, the court's review of that

1   petition demonstrates he did not. The court concludes, therefore, that petitioner did not exhaust

2   his proposed Claim 5, and is thus precluded from asserting it in an amended petition.

3              Respondent next contends that petitioner failed to exhaust his state court remedies

4   as to his proposed Claim 7 because petitioner "never raised" the issue in the California Supreme

5   Court. (Dkt. No. 39 at 25.)  Petitioner's proposed Claim 7 asserts that the prosecution committed

6   Brady error by failing to produce to the defense a copy of the audiotape, and any transcript

7   thereon, of the prosecutor's March 9, 2006 interview with the victim, "L.S."  Review of the

8   pertinent pleadings demonstrates that petitioner did raise this claim at each state court level,

9   including the California Supreme Court, and therefore "technically exhausted" the claim.

10  Petitioner clearly raised this claim in his Superior Court petition filed July 17, 2008 (Super. Ct.

11  Case No. 08-1126 (Ldgd. Doc. No. 12 at 3-4)), which was summarily denied on August 4, 2008

12  (Ldgd. Doc. No. 13).  Petitioner also clearly raised this claim in his Court of Appeal petition filed

13  September 9, 2008 (App. Ct. Case No. CO59893 (Ldgd. Doc. No. 14 at 3-4)), which was

14  summarily denied on September 18, 2008 (Ldgd. Doc. No. 15)).  In his Supreme Court petition

15  filed February 10, 2009, petitioner again asserted this claim, as well as two other Brady claims.

16  (Cal. Supreme Court Case No. S170534 (Ldgd. Doc. No. 22 at 3, 5-6).)  However, as earlier

17  noted, the California Supreme Court denied this petition on November 17, 2009, with a citation

18  to In re Clark, 5 Cal. 4th 750 (1993).  (Ldgd. Doc. No. 23.)

19             As discussed above, the California Supreme Court's citation to Clark indicates

20  that the petition was untimely filed.  The United States Supreme Court recently upheld the

21  California Supreme Court's "general reasonableness standard" for assessing the timeliness of a

22  habeas petition, and held that denial of a petition on this ground provides an independent state

23  law ground adequate to bar habeas relief in the federal court.  Walker v. Martin, ___ U.S. ___,

24  2011 WL 611627 (Feb. 23, 2011).  This bar is qualified, however.  "[A]n adequate and

25  independent finding of procedural default will bar federal habeas review of the federal claim,

26  unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or

1  demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of

2  justice." Harris v. Reed, 489 U.S. 255, 262 (1989) (citations and internal quotation marks

3  omitted); Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977) (applying "cause" and "prejudice" test

4  to state procedural waiver); Dretke v. Haley, 541 U.S. 386, 393 (2004) (recounting history of

5  equitable exception to procedural default doctrine).  To establish cause for a procedural default, a

6  petitioner must establish that "some objective factor external to the defense" impeded his efforts

7  to comply with the state's procedural rules, e.g. interference by state officials, or that "the factual

8  or legal basis for a claim was not reasonably available." Murray v. Carrier, 477 U.S. 478, 488

9  (1986).

10      Petitioner does not assert any reason for his delay in filing the subject petition in

11  the California Supreme Court.  Hence, the court need not reach the question of prejudice in a

12  "cause and prejudice" analysis.  Wainwright, supra, 433 U.S. at 87.  Petitioner does, however,

13  contend throughout his motion that this court's failure to consider his Brady claim would result

14  in a fundamental miscarriage of justice.  Harris v. Reed, supra, 489 U.S. at 262.  The court

15  therefore addresses this matter.[21]

16      According to the transcript of the March 14, 2006 preliminary hearing on Superior

17  Case No. 06-534 (CT at 114-62), Deputy District Attorney John Quinn interviewed L.S. on

18  March 9, 2006, in the presence of prosecution investigator Michael Carroll (id. at 118-27, 138-

19  52).  Because no transcript had been made of the interview, the court suspended the preliminary

20  hearing for a short period of time to enable petitioner and his trial counsel to listen to the audio

21  recording.  (Id. at 126-27.)  Despite filing an earlier motion to continue the preliminary hearing

22  (CT 104-07), and opposition to the prosecution's motion to consolidate the two actions against

23

24  [21]  Similar factors underlay consideration of a timely-filed Brady claim.  Brady v.
Maryland, supra, 73 U.S. 83.  "There are three components of a Brady violation: 'The evidence at

25  issue must be favorable to the accused, either because it is exculpatory, or because it is
impeaching; that evidence must have been suppressed by the State, either willfully or

26  inadvertently; and prejudice must have ensued.'" United States v. Price, 566 F.3d 900, 907 (9th
Cir. 2009), quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

petitioner (CT 169-74), petitioner and his trial counsel each agreed to proceed with the preliminary hearing, both before and after listening to the audio recording (CT at 121-22, 124-25).  When the preliminary hearing reconvened, both defense counsel and the district attorney questioned investigator Carroll as to the contents of the recording, particularly the statements made by L.S.  (CT at 138-52.)  At trial, on March 27, 2006, the trial court noted the absence of a transcript of the interview and denied admission of the recording itself.  (RT at 662-63, 674-77.)  Instead, investigator Carroll was called as a defense witness to testify about the interview and L.S.'s statements therein.  (RT at 721-31.)

On October 15, 2007, more than a year after his conviction and sentencing, petitioner filed an "Application for Order Directing Trial Counsel to Furnish Trial Files to Petitioner," specifically requesting the "casette" and transcript of the prosecutor's interview of the victim. (Dkt. No. 30 at 51-55; Ldgd. Doc. No. 14, Exh. A.)  On November 21, 2007, the trial court granted the application, stating in pertinent part:  "Trial files requested by Defendant/ DA is not ordered to turn over work product.  Transcript of CD is ordered if it exists -- DA to try & locate the CD.  DA will give to Atty Johnson.  Otherwise the CD is to be given to Atty Johnson to have the transcript made -- release Doc's to Def -- authorized to prepare transcript as Appointed Counsel." (Dkt. No. 30 at 56.)  This court's review of the entire case file indicates that apparently petitioner was never provided with a copy of the subject audiotape or transcript thereon.

Petitioner asserts that the subject interview included the prosecutor's discussion with L.S. about a separate domestic violence case then pending against her, implying (but not contending) that there may have been a promise of leniency for her testimony against petitioner and/or that the tape would reveal the victim's propensity for violent acts.  In addition, petitioner states that the interview includes the victim's statement that she was "never raped" by petitioner, notwithstanding the prosecutor's legal conclusion that she had been raped.  Petitioner asserts that the interview led to the charges filed in Case No. 06-534, and the latter's consolidation with Case

24

No. 05-2395, thereby inflaming the jury and tainting the jury's consideration of the charges in the first-filed case.  (Dkt. No. 30 at 9-10, 14-16, 21.)  Petitioner asserts that the audiotape gave "trial counsel . . . material evidence and available witness testimony that would have given a true fact of events and thus bringing a different verdict."  (Id. at 21.)

At trial, on March 27, 2006, defense counsel sought to play the entire recording ("about 15 minutes") for the jury in order to demonstrate that "the tape contains a whole series of inconsistent statements by [the victim] . . . [with] what she testified here in court as to what she had already told Mr. Quinn.  And that's in addition to what the police officer said she told them." (RT at 662.)  After the trial court denied admission of the recording itself  (RT at 677), defense counsel elicited investigator Carroll's testimony of the victim's interview statements, although not made under oath, viz., that petitioner had choked her during the November 2005 alleged sex incident, but that she didn't consider petitioner's actions "rape;" that, at the December 2005 incident, petitioner had pulled her through the car window (as compared to her other statements that he unlocked the door after breaking the window), and that she didn't remember how she got into the house, although petitioner had forced her; the victim also stated that she was afraid of petitioner (RT at 723-31).

Neither the testimony elicited by defense counsel from investigator Carroll, nor petitioner's contentions herein, indicate that the substance of the interview contained material evidence that was so clearly favorable to petitioner that its admission may have impacted the jury's verdicts.  All of the information contained in the audio recording was available to defense counsel at trial and presumably relied upon in defense counsel's questioning of Carroll.  There is no evidence that the prosecution's failure to produce a copy of the audio recording and/or transcript may have resulted in a "fundamental miscarriage of justice" sufficient to overcome the requirement that this claim be exhausted in the state courts.  Harris v. Reed, supra, 489 U.S. at 262.

The court finds, therefore, that petitioner's proposed Claim 7 was not exhausted in

1    the state courts and does not come within an equitable exception warranting this court's review

2    of the claim on its merits.

3                              ii.  Relation Back to Original Claims

4            The court next addresses whether petitioner's proposed Claims 1-4, 6 and 8,

5    which respondent does not challenge as unexhausted, relate back to either of the two claims

6    asserted in petitioner's original petition, viz., that insufficient evidence supports petitioner's

7    conviction of corporal injury to a cohabitant, and that the trial court erred by imposing the upper

8    sentencing term on petitioner's kidnapping conviction.  In addition, in an abundance of caution,

9    the court addresses whether petitioner's proposed Claims 5 and 7, even if exhausted, would relate

10   back to petitioner's original petition.

11                          (a).  Proposed Claims 1 and 2

12           Proposed Claims 1 and 2 each challenge the sufficiency of the evidence to support

13   the jury's verdicts.  Claim 1 challenges the sufficiency of the evidence to support petitioner's

14   vandalism conviction under Section 594, while Claim 2 challenges the sufficiency of the

15   evidence to support petitioner's sexual battery conviction under Section 243.4.  Neither proposed

16   claim shares a common core of operative facts with petitioner's original sentencing claim.

17   Moreover, each proposed claim is clearly "separated in time and type," Mayle, 545 U.S. at 657,

18   from petitioner's original sufficiency of the evidence challenge.  Petitioner's challenge to his

19   conviction on Section 273.5, corporal injury to a cohabitant, is premised on the injury L.S.

20   sustained on December 22, 2006.  The vandalism conviction, while also premised on the alleged

21   conduct of December 22, 2006, is based on the damage to the victim's car, not injury to L.S., and

22   is thus 'separated in time and type."  Similarly, while petitioner's sexual battery conviction, like

23   his corporal injury conviction, is premised on petitioner's alleged physical touching of the victim,

24   those charges were based on conduct alleged to have occurred on different dates.  Accordingly,

25   each claim rests on "separate congeries of facts," Mayle, 545 U.S. at 661, embracing separate

26   "occurrences" within the meaning of Federal Rule of Civil Procedure 15(c)(2).

1    Accordingly, neither Proposed Claim 1 nor Proposed Claim 2 "relate back" to the

2    claims presented in petitioner's original petition, and thus neither provide a basis for granting

3    leave to amend that petition.

4                              (b).  Proposed Claim 3

5    Proposed Claim 3 contends that Deputy District Attorney Quinn engaged in

6    prejudicial misconduct in the following ways:  (1) "threatened petitioner's trial attorney in open

7    court that if he called a witness to testify, James Kelley, that witness would be subject to arrest;"

8    (2) threatened potential defense witness Marva Robinson (petitioner's mother) that if she

9    testified, Mr. Quinn would "see that [she] hurt [petitioner] with her testimony," and told Ms.

10   Robinson that petitioner's defense attorney was "an idiot;" and (3) misrepresented the evidence

11   to the jury in his closing argument as to the events of December 22, 2005, by theorizing that

12   "petitioner wiped blood off of the coffee table, that petitioner used his shirt to do so, and then hid

13   his shirt," and by mischaracterizing the testimony of Deputy Blaney by theorizing that petitioner

14   used a pipe to break into L.S.'s car.  (Dkt. No. 30 at 25-26, 379, and Exh. O.)  Each of these

15   contentions was asserted in petitioner's unsuccessful motion for a new trial.  (CT at 371-99).

16   Prosecutorial misconduct rises to the level of constitutional deprivation when it

17   "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process."

18   Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1984); Darden v. Wainright, 477 U.S. 168, 181

19   (1986).  Defense counsel intended to call Kelly and Robinson for the common purpose of

20   discrediting the victim.  (See e.g. RT at 622-26, 654, 660-61, 663.)  Kelly was not subpoenaed

21   and did not show, and defense counsel decided against calling Robinson.  Neither Kelly nor

22   Robinson were witnesses to the events of November 2005 or December 22, 2005.  Their

23   testimony was intended only to impugn the credibility of L.S. and thereby bolster the credibility

24   of petitioner.  A challenge to the omission of this testimony, even if due to prosecutorial

25   misconduct, cannot be said to be of the "same time and type" as petitioner's specific and limited

26   challenge to the sufficiency of the evidence supporting his conviction on corporal injury to a

1    cohabitant, or his sentencing on the upper term for kidnapping. While credibility was a

2    significant factor at trial, "[i]f claims asserted after the one-year period could be revived simply

3    because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's

4    limitation period would have slim significance." Mayle, 545 U.S. at 662.  Petitioner's third

5    allegation, challenging the prosecutor's closing statements regarding the alleged vandalism to the

6    victim's car, is even more attenuated, involving entirely different facts than those presented by

7    petitioner's original claims.[22]

8            Thus, the court finds that the allegations of Proposed Claim 3 do not relate back to

9    the claims presented in petitioner's original petition, and therefore fail to provide a basis for

10   granting leave to amend.

11                 (c).  Proposed Claim 4

12           Proposed Claim 4 asserts denial of petitioner's right to a speedy trial in Case No.

13   05-2395.  This claim is unrelated to either claim set forth in the original petition, and thus does

14   not relate back to the petition for purposes of amendment.

15           Moreover, the claim is without merit.  The right of a defendant to a speedy trial is

16   secured in both the state and federal constitutions, U.S. Const., 6th Amend.; Cal. Const., art. I, §

17   15, and is expressly provided by California statute.  Absent the waiver or consent of the

18   defendant, or for good cause shown, a defendant charged with a felony must be "brought to trial

19   within 60 days of the defendant's arraignment on an indictment or information. . . ." Cal. Penal

20   Code § 1382(a)(2); see e.g. People v. Hajjaj (2010) 50 Cal. 4th 1184, 1194.  While petitioner

21   asserts correctly that he did not waive his right to a speedy trial (Dkt. No. 30 at 27, RT at 12), he

22   contends that commencement of his trial, on March 21, 2006, was more than 60 days after his

23   arrest on December 22, 2005, and entry of his not guilty plea on December 29, 2005.  (Dkt. No.

24   30 at 27.)

25

26        [22]  Moreover, the jury was clearly instructed that "[n]othing that the attorneys say is
     evidence. . . . Only the witnesses' answers are evidence."  (CT  at 294; RT at 834.)

1    The initial complaint in Case No. 05-2395 was filed on December 29, 2005, and

2    petitioner plead not guilty to the charges therein.  (CT at 1-7, RT at 1-3,8-10.)  A preliminary

3    hearing was held on January 17, 2006, and the information was filed on January 27, 2006.  (CT at

4    13-80.)  On January 31, 2006, petitioner was arraigned on the information and entered pleas of

5    not guilty.  (CT at 81, RT at 11.)  At this arraignment, after determining that "the last day for

6    trial, for jury selection is April 3d," the trial court set trial to commence on March 21, 2006.  (RT

7    at 12, 13.)   The duration of this period, from the date of petitioner's arraignment following the

8    preliminary hearing and the commencement date of trial, was 49 days, well within the 60-day

9    period required by California Penal Code section 1382.

10                   (d).  Proposed Claim 5

11                   Proposed Claim 5, that petitioner's assertion that his kidnapping conviction was

12   not supported by substantial evidence, has been found by the court to be nonexhausted.  Even if

13   exhausted, the claim would not meet the relation back requirement for amendment.  Like

14   petitioner's proposed Claims 1 and 2, Claim 5 is "separated in time and type" from petitioner's

15   exhausted claims.  Petitioner's kidnapping conviction is premised on petitioner's alleged conduct

16   in transporting L.S. from her car into petitioner's home, while petitioner's conviction for corporal

17   injury to a cohabitant is premised on petitioner's alleged conduct inside the home.  The claims do

18   not share a common core of operative facts.  Additionally, petitioner's original challenge to the

19   sentence imposed on his kidnapping conviction does not share a common core of operative facts

20   with his proposed claim that the conviction itself is unsupported by substantial evidence.

21                   Accordingly, the court concludes that proposed Claim 5, even if exhausted, does

22   not relate back to the claims set forth in the original petition.

23                   (e).  Proposed Claim 6

24                   Proposed Claim 6 challenges the trial court's instruction to the jury as to the

25   asportation requirement underlying petitioner's kidnapping conviction pursuant to California

26   Penal Code section 207.  As noted in the discussion concerning petitioner's proposed Claim 5,

1   the substance of petitioner's kidnapping conviction was not raised in his initial federal petition,

2   only petitioner's sentencing thereon.  Because these matters are distinct, both factually and

3   legally, petitioner's proposed Claim 6 cannot be said to relate back to the claims set forth in his

4   original petition.

5        Moreover, proposed Claim 6 is without merit.  The Due Process Clause of the

6   Fourteenth Amendment requires the prosecution to prove every element of a charged offense

7   beyond a reasonable doubt.  In re Winship, 397 U.S. 358, 364 (1970).  A jury instruction that

8   "reduce[s] the level of proof necessary for the Government to carry its burden . . . is plainly

9   inconsistent with the constitutionally rooted presumption of innocence."  Cool v. United States,

10  409 U.S. 100, 104 (1972).  The pertinent elements of kidnapping are set forth in California Penal

11  Code section 207:  "Every person who forcibly, or by any other means of instilling fear, steals or

12  takes, or holds, detains, or arrests any person in this state, and carries the person into another

13  country, state, or county, or into another part of the same county, is guilty of kidnapping."  Cal.

14  Penal Code § 207(a).  Petitioner asserts that, even assuming the prosecution's version of events,

15  petitioner did not move L.S. far enough to constitute kidnapping under state law.  It was alleged

16  that petitioner moved L.S. from her car into petitioner's house.  Deputy Blaney testified that the

17  approximate distance from L.S.'s vehicle to the entry wall of the garage was 30 to 40 feet, and

18  from the garage wall to the house door inside the garage approximately 15 feet (RT at 456-57), or

19  a total of 45 to 55 feet.

20       The trial court instructed the jury pursuant to Judicial Council of California

21  Criminal Jury Instructions ("CALCRIM") No. 1215, which provides in pertinent part that the

22  defendant, "using force or fear," moved the victim a "substantial distance"  (CT 325, RT 880-

23  81.)  "Substantial distance" is defined as "more than a slight or trivial distance . . . consider[ing]

24  all the circumstances relating to the movement."  (Id.)  The factors to be considered included

25  "whether the movement increased the risk of physical or psychological harm, increased the

26  danger of a foreseeable escape attempt, gave the attacker a great opportunity to commit

30

1   additional crimes, or decreased the likelihood of detection." (Id.)  California Jury Instruction

2   ("CALJIC") No. 9.50, which petitioner asserts the trial court should instead have given, also

3   requires a finding of movement over a "substantial distance" that is "more than slight or trivial,"

4   with consideration of the "totality of circumstances attending the movement," setting forth

5   factors similar to those set forth in CALCRIM No. 1215.

6          Thus, both model instructions—the instruction given by the trial court and the

7   alternative instruction now proffered by petitioner—reflect the California Supreme Court's

8   express rejection of any requirement that the asportation element of kidnapping requires

9   movement of a specific or minimal distance, instead requiring consideration of the "totality of

10   circumstances."  People v. Martinez (1999) 20 Cal. 4th 225, 236-37; People v. Reed (2000) 78

11   Cal. App. 4th 274, 284; People v. Morgan (2007) 42 Cal. 4th 593, 606-07; People v. Burney

12   (2009) 47 Cal. 4th 203, 233 n.8.  The case cited by petitioner does not support his argument that

13   a specific distance must support the asportation element of a kidnapping conviction. Although

14   People v. John (1983) 149 Cal. App. 3d 798, was decided before Martinez required consideration

15   of the "totality of circumstances," the court in John nonetheless found the "nature of the

16   asportation" significant.  Id. at 806.  The court found that, although the victim was required to

17   move a total of approximately 465 feet in the course of a robbery, his "treatment was not violent,

18   he was not injured, and he was moved only on foot from place to place on the grounds and within

19   his home while the crime was continued." Id.  The "totality of circumstances," not the distance

20   moved, was controlling.

21          Accordingly, the court concludes that proposed Claim 6 does not relate back to

22   the claims set forth in the original petition and therefore fails to provide a basis for granting leave

23   to amend; moreover, the claim is without merit.

24                  (f).  Proposed Claim 7

25          Proposed Claim 7 is petitioner's Brady claim, discussed at length above, that the

26   prosecution committed error by failing to produce a copy of the audiotape, and any transcript

thereon, of the prosecutor's March 9, 2006 interview with the victim, "L.S." This claim has been found by the court to be nonexhausted. Even if exhausted, the claim would not meet the relation back requirement for amendment. To relate back to petitioner's original federal petition, this claim must arise from a common core of operative facts relative to petitioner's sufficiency of the evidence claim; it clearly does not share common facts with petitioner's sentencing claim. The only commonality of petitioner's <u>Brady</u> claim with his challenge to the sufficiency of the evidence supporting his conviction for corporal injury to a cohabitant, is petitioner's general assertion that the victim's testimony was not credible and may have been impeached if the defense had been given its own a copy of the audiotape and/or a transcript. Not only has the court addressed the weakness of this assertion, but <u>Mayle</u> precludes relation back based on such a general and attenuated basis. <u>Mayle</u>, 545 U.S. at 662 (precluding relation back based on assertion that the original and proffered claims relate to the "same trial [or] conviction").

Accordingly, the court concludes that proposed Claim 7, even had it been properly exhausted, does not relate back to the claims set forth in the original petition.

### (g).  Proposed Claim 8

Proposed Claim 8 asserts that petitioner's appellate counsel was ineffective for failing to conduct an investigation of petitioner's claims concerning "trial counsel[']s conduct and . . . of the many constitutional issues which rendered petitioner's jury trial a farce," and by failing to "correct" the trial record or object to the Court of Appeal's summary of the evidence (Dkt. No. 30 at 12, 16-22, 29; Dkt. No. 46, at 2.) Petitioner also asserts that his appellate counsel improperly "chose the two most difficult arguments to challenge and overcome[:] 'General intent' and the upper term sentence." (Dkt. No. 30 at 12.) Petitioner asserts that appellate counsel should instead have "investigate[d] trial counsel[']s incompetence" and brought a "meritorious claim on direct appeal." (Dkt. No. 46 at 2.) Petitioner asserts that his defense counsel erred throughout the trial, particularly that he failed to object to the prosecutor's alleged misconduct, failed to introduce evidence that would have undermined the credibility of L.S., and

conspired with the prosecutor to convict petitioner, the latter contention based on hearsay that counsel engaged in an out-of-court dialogue with the deputy district attorney "about how may people they sent to prison together." (Id. at 11-13, 18, 20, 29.)

While petitioner challenges the decision of appellate counsel to pursue the exhausted claims now before this court, he does not contend that the appellate arguments presented in support of these claims were inadequate.  Rather, petitioner asserts that appellate counsel should have pursued other claims.  However, because petitioner's motion for leave to file an amended federal habeas petition was untimely filed, and this court has found that none of the claims contained therein relate back to petitioner's original claims, petitioner has no substantive claim on which to hinge the relation back of his ineffective appellate assistance claim.  While an ineffective assistance of counsel claim may relate back to the substance of a timely-filed claim, see e.g. Fradiue v. Pliler, 2011 WL 70560, *13-14 (E.D. Cal. 2011) (citing cases), the only timely-filed substantive claims in this action involve matters that are not encompassed by petitioner's ineffective assistance claim.

Moreover, even were the court to reach this claim, it appears to lack merit.  The Sixth Amendment right to counsel extends to the effective assistance of appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285 (2000).  A claim of ineffective assistance of appellate counsel is reviewed according the Strickland standard that is applied to trial counsel.  Id. at 287 (citing Strickland v. Washington, 466 U.S. 668 (1984)).  First, a petitioner must show that, considering all of the circumstances, counsel's performance fell below an objective standard of reasonableness.  Id. at 688.  To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  Id. at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or

////

////

////

omissions were outside the wide range of professional competent assistance.[23]  Id.  "We strongly

presume that counsel's conduct was within the wide range of reasonable assistance, and that he

exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg,

898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).  Second, a petitioner must

affirmatively prove prejudice.  Strickland, 466 U.S. at 693.  Prejudice is found where "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to

undermine confidence in the outcome."  Id.

Here, petitioner has failed to meet his burden of demonstrating either deficient

performance by appellate counsel or prejudice resulting from his failure to pursue a specific

claim.  Petitioner has not shown that any of the omitted claims have sufficient merit that it is

reasonably likely that their direct appeal may have been successful.

Accordingly, the court concludes that proposed Claim 8 does not relate back to

either claim set forth in the original petition, nor may such relation back be premised on any of

petitioner's subsequently exhausted but untimely-filed claims.

(h).  Conclusion as to Relation Back

For the foregoing reasons, the court finds that none of petitioner's newly proposed

claims relate back to either of petitioner's original claims.  Mayle v. Felix, 545 U.S. at 657-62.

---

[23]  The right to effective assistance does not impose a constitutional duty on appellate counsel to raise every nonfrivolous issue requested by an appellant.  Jones v. Barnes, 463 U.S. 745, 751-54 (1983).  Rather, appellate counsel should select issues that maximize the likelihood of success on appeal.  Id.; Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989) ("the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy").  In order to establish prejudice, a petitioner "must show a reasonable probability that, but for his counsel's unreasonable failure [to raise a certain issue], he would have prevailed on appeal."  Smith v. Robbins, supra, 528 U.S. at 285; Wildman v. Johnson, 261 F.3d 832, 840 (9th Cir. 2001) ("appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal," citing Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000)); Pollard v. White, 119 F.3d 1430, 1435-37 (9th Cir. 1997) (appellate counsel not deficient for failing to present claims unsupported by the evidence or for which there was no likelihood of success).

1   Absent such relation back, petitioner's proposed claims remain untimely filed under the statute of

2   limitations, and his motion for leave to file an amended habeas petition must be denied.  The

3   court therefore turns to the merits of petitioner's timely-filed claims, as presented in his original

4   petition for habeas corpus.

5       C.  Merits of Original Petition

6           Pursuant to his original habeas petition, petitioner contends that:  (1) there was

7   insufficient evidence to support petitioner's "corporal injury to a cohabitant" conviction pursuant

8   to Section 273.5(a); and (2) the trial court committed error under Cunningham v. California,

9   supra, 549 U.S. 270, by imposing the upper sentencing term on petitioner's kidnapping

10  conviction pursuant to Section 207.  (Dkt. No. 1 at 4.)

11          For the following reasons, the court concludes that neither contention is

12  meritorious.

13      1.  Section 273.5 Conviction

14  California Penal Code section 273.5(a) provides in pertinent part:

15      Any person who willfully inflicts upon a person who is his or her
        spouse, former spouse, cohabitant, former cohabitant, or the
16      mother or father of his or her child, corporal injury resulting in a
        traumatic condition, is guilty of a felony, and upon conviction
17      thereof shall be punished by imprisonment in the state prison for
        two, three, or four years, or in a county jail for not more than one
18      year, or by a fine of up to six thousand dollars ($6,000) or by both
        that fine and imprisonment.
19

20  Petitioner was charged with this crime based on the victim's head injury sustained on December

21  22, 2005.  The jury found petitioner guilty of this felony offense (CT at 351), and the trial court

22  sentenced petitioner on this basis to a "concurrent middle term of 3 years" (id. at 414).  Petitioner

23  now challenges the sufficiency of the evidence to support this conviction.

24          a.  Legal Standards

25          When a challenge is brought alleging insufficient evidence, federal habeas corpus

26  relief is available if it is found that upon the record evidence adduced at trial, viewed in the light

most favorable to the prosecution, no rational trier of fact could have found "the essential

elements of the crime" proven beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,

319 (1979).  Jackson established a two-step inquiry for considering a challenge to a conviction

based on sufficiency of the evidence.  U.S. v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en

banc).  First, the court considers the evidence at trial in the light most favorable to the

prosecution.  Id. (citing Jackson, 443 U.S. at 319).  "'[W]hen faced with a record of historical

facts that supports conflicting inferences," a reviewing court 'must presume -- even if it does not

affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of

the prosecution, and must defer to that resolution.'"  Id., quoting Jackson, 443 U.S. at 326.

"Second, after viewing the evidence in the light most favorable to the prosecution,

a reviewing court must determine whether this evidence, so viewed is adequate to allow 'any

rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'"  Id.

(quoting Jackson, 443 U.S. at 319).  "At this second step, we must reverse the verdict if the

evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would

have to conclude that the evidence of guilt fails to establish every element of the crime beyond a

reasonable doubt."  Id.

Superimposed on these already stringent standards is the AEDPA requirement that

even if a federal court were to initially find on its own that no reasonable jury should have

arrived at its conclusion, the court must further determine whether the state appellate court would

nonetheless have affirmed the verdict under the Jackson standard in the absence of an

unreasonable determination.  Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

### b.  Analysis

Petitioner initially contends that the prosecutor (and hence the jury) improperly

relied on a "subjective standard" to reach an "implied assumption" that petitioner intended to

cause harm to the victim.  (Dkt. No. 1 at 5.)  While acknowledging that Section 273.5 is a

"general intent" offense, petitioner argues that the prosecutor failed to prove beyond a reasonable

doubt that petitioner was a "willing participant" in the alleged domestic violence incident, that is, that he "intended to '[w]ilfully' or willingly inflict[] harm to the alleged victim." (Id.) Petitioner asks the court "to use the 'Objective Standard' rather than the 'Subjective Standard' when viewing the evidence," citing People v Sargent (1999) 19 Cal. 4th 1206, 1215, for the principle that "general intent crimes require only [w]illingness to the proscribed act." (Id.)

In his traverse, petitioner more directly challenges the evidence underlying this conviction, recounting his own testimony and reasonable inferences to be drawn therefrom, while discounting the testimony and credibility of L.S. Petitioner also makes unrelated assertions, e.g., that the consolidation of his criminal cases inflamed the jury, as did the different racial backgrounds of petitioner and L.S. (Dkt. No. 23 at 2-14.)

The Court of Appeal, the last state court to issue a reasoned decision, denied petitioner's challenge to the sufficiency of the evidence underlying his conviction pursuant to Section 273.5(a), for the following reasons:

> Substantial Evidence to Support the Section 273.5 Conviction
>
> Defendant contends that in order to commit the crime of willful injury on a cohabitant, the jury needed to find that he acted with the willful intent to injure L.S. Since there was no evidence he harbored the specific intent to cause harm, defendant asserts the record lacks sufficient evidence to support the conviction.
>
> Defendant's argument proceeds from a false premise. Willful infliction of corporal injury upon a cohabitant (§ 273.5) is a general intent offense. (People v. Thurston (1999) 71 Cal. App. 4th 1050, 1055.) To establish the crime, the prosecution need prove only a willing act, which results in a "'traumatic condition.'" (Ibid.; see also People v. Sargent (1999) 19 Cal. 4th 1206, 1215 [general intent crime requires only a willingness to do the proscribed act].) A specific intent to cause injury is not required. (Thurston, supra, 71 Cal. 4th at p. 1054.)
>
> Accordingly, defendant's citation to In re Sergio R. (1991) 228 Cal. App. 3d 588, is misplaced, because that case dealt with a different statute, section 12022.7, which imposes additional punishment for willfully causing great bodily injury while committing a specified felony, an enhancement that requires the specific intent to injure. (In re Sergio R., at p. 599.)

Defendant also maintains that the evidence shows, at best, that L.S. hit her head by accident and thus cannot support a section 273.5 conviction.  He asserts that People v. Jackson (2000) 77 Cal. App. 4th 574, supports his position.

In People v. Jackson, the victim's injury occurred when she tripped over a curb while trying to run away.  (People v. Jackson, supra, 77 Cal. App. 4th at p. 576.)  The court found no willful infliction because the injury did not result from the defendant's use of force, but was a result of the victim's own act of tripping.  (Id. at 580.) Defendant argues "[i]t is not enough to show that the injury was the result of an accident in which the defendant was involved." However, the People v. Jackson court stated that willful infliction would occur if the "corporal injury results from a direct application of force on the victim by the defendant."  (Ibid.)

Here, the jury heard evidence that defendant dragged L.S. to the floor until she blacked out, awakening with a head laceration.  In her account to the interviewing officers, L.S. also indicated that she thought she struck her head on a coffee table while defendant was pulling her.  This story was consistent with the physical evidence found at the scene -- blood on the coffee table and a deep blood stain on the carpet nearby.

While defendant testified that the injury was a result of L.S.'s own acts, his credibility was highly suspect, especially since his explanation at trial was completely different from the tale he told the investigating officers about L.S. hitting herself over the head with a board.

When reviewing for sufficiency of the evidence, a court reviews the record to determine if there is "'evidence that is reasonable, credible and of solid value from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.'"  (People v. Catlin (2001) 26 Cal. 4th 81, 139 (Catlin); Jackson v. Virginia (1979) 443 U.S. 307, 319  [61 L. Ed. 2d 560, 573].)  As the sole judge of credibility (Pescosolido v. Smith (1983) 142 Cal. App. 3d 964, 970), the jury had the right to disbelieve defendant and instead to credit the evidence pointing to the conclusion that L .S. suffered the injury when she struck her head on the coffee table as she was being pulled by her assailant.

Deferring to the jury's role as trier of fact and resolving all conflicts in support of the verdict, we conclude there was substantial evidence of corporal injury resulting from "a direct application of force on the victim by [defendant]."  (People v. Jackson, supra, 77 Cal. 4th at p. 580.)  Defendant's challenge to the sufficiency of the evidence must be rejected.

People v. Clemens, supra, 2007 WL 2584998, at *1-3.  (Ldgd. Doc. No. 6.)

1    As found by the Court of Appeal, the jury reasonably exercised its discretion to

2    credit the testimony of L.S., which was consistent with the physical evidence.  As noted by the

3    Court of Appeal, petitioner's credibility suffered by his own statement to the investigating

4    officers that L.S. injured herself by hitting herself over the head with a board.  Although

5    petitioner now claims that the "board rumor" was begun by Deputy McGrew, when he accused

6    petitioner of hitting L.S. with a board (Dkt. No. 23 at 7), this otherwise unsupported allegation

7    was not before the jury, and may not now be considered by this court.

8    While petitioner correctly cites People v Sargent, supra, 19 Cal. 4th 1206, for the

9    principle that a general intent crime requires proof only that defendant intended to do the

10   proscribed act (Dkt. No. 1 at 5), he then argues that "the prosecutor in his assumption never

11   produced evidence that petitioner's state of mind, during the incident, was one that constituted a

12   "[w]illingness to inflict harm or injury" (id.).  Sargent is instructive in demonstrating that Section

13   273a (felony child abuse), like Section 273.5, requires proof that the defendant intended only to

14   commit the proscribed act, not that he intended the resulting injury.  Sargent, supra, 19 Cal. 4th at

15   1224 (referencing Section 273a); cf. People v. Thurston, supra, 71 Cal. App. 4th at 1054 (noting,

16   with reference to Section 273.5(a), that "[o]ur courts have consistently held that this offense is a

17   general intent crime requiring only that the assailant have purpose or willingness to commit the

18   act, not the specific intent to inflict the traumatic injury") (citations and internal quotations

19   omitted).  An injury must nonetheless result.  As concluded by the court in Jackson, "[s]ince it

20   appears that the Legislature intended section 273.5 to define a very particular battery, we

21   conclude the section is not violated unless the corporal injury results from a direct application of

22   force on the victim by the defendant.  People v. Jackson, supra, 77 Cal. App. 4th at 580.  As

23   provided by the statute itself, the jury must find that the defendant "willfully inflict[ed] [on a

24   cohabitant] . . . corporal injury resulting in a traumatic condition."  Cal. Penal Code § 273.5(a).

25   Thus, the prosecutor needed to provide sufficient evidence for the jury to reasonably conclude

26   that petitioner intended to use, and did use, physical force against L.S. that resulted in her injury.

1        A reviewing court may not second-guess decisions the jury made in the course of

2  determining the credibility of witnesses, resolving conflicts in the testimony, weighing the

3  evidence, and drawing reasonable inferences from proven facts.  Jackson, 443 U.S. at 319; see

4  also McDaniel v. Brown, 130 S. Ct. 665, 674 (2010) (under Jackson, a court must review all the

5  evidence in the light most favorable to the prosecution and may not merely recite or highlight

6  inconsistencies in the testimony).  Based on the testimony before the jury, it was not

7  unreasonable for the jury to find that petitioner wilfully applied direct force to the victim, causing

8  her to fall and sustain the injury to her head.  As concluded by the Court of Appeal, "there was

9  substantial evidence of corporal injury resulting from 'a direct application of force on the victim

10  by [defendant].'"  People v. Clemens, supra, 2007 WL 2584998, at *3, quoting People v.

11  Jackson, supra, 77 Cal. App. 4th at 580.

12        For these reasons, petitioner's insufficiency of the evidence claim is without

13  merit.  The denial of this claim by the California courts, based on the reasoning set forth in the

14  Court of Appeal's decision, was not an unreasonable application of clearly established Supreme

15  Court authority.

16        2.  Alleged Cunningham Error

17        Petitioner contends that the trial court committed error under Cunningham v.

18  California, supra, 549 U.S. 270, by imposing the upper sentencing term of eight years based on

19  petitioner's kidnapping conviction pursuant to Section 207.

20        In imposing the upper term, the trial judge found that the following aggravating

21  matters outweighed any mitigating factors:  (1) petitioner had "numerous prior convictions,

22  including a prison term," the latter allegation found true pursuant to Section 667.5(b), based on

23  petitioner's admission thereto; (2) petitioner was on parole at the time the current crimes were

24  committed; and (3) the instant crimes involved violent conduct and resulted in great bodily injury

25  to the victim.  (RT at 1048-54, CT at 413-14.)

26        a.  Legal Standards

1        California's Determinate Sentencing Law ("DSL") sets forth three possible terms

2   of imprisonment for specified crimes.  When a judgment of imprisonment is to be imposed, the

3   trial judge must sentence the defendant to the middle term unless circumstances in aggravation or

4   mitigation warrant imposition of the lower or upper term.  Cal. Penal Code § 1170(b).

5        A criminal defendant is entitled to a trial by jury and to have every element

6   necessary to sustain his conviction proven by the state beyond a reasonable doubt.  U. S. Const.

7   amends. V, VI, XIV.   In Apprendi v. New Jersey, 530 U.S. 466 (2000), the United States

8   Supreme Court held, as a matter of constitutional law that, "[o]ther than the fact of a prior

9   conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

10  maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.

11  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court held that the "statutory

12  maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the

13  basis of the facts reflected in the jury verdict or admitted by the defendant."  Blakely, 542 U.S. at

14  303.  In Cunningham v. California, supra, 549 U.S. 270, the Supreme Court held that the middle

15  term in California's Determinate Sentencing Law was the relevant statutory maximum for

16  purposes of applying Blakely and Apprendi.[24]  Cunningham, 549 U.S. at 291.  The California

17  Supreme Court later held that only one aggravating factor is necessary to authorize an upper term

18  sentence and withstand a Sixth Amendment challenge.  Butler v. Curry, supra, 528 F.3d at 641-

19  43; People v. Black, 41 Cal.4th 799, 813 (2007) (Black II).

20       The rule that a jury must find beyond a reasonable doubt any aggravating factor

21  relied upon to support imposition of an upper sentencing term does not apply to the fact of a prior

22  conviction, which need not be submitted to a jury.  Apprendi, supra, 530 U.S. at 490;

23  Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998) ("[T]o hold that the Constitution

24  requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt

25

26       [24]  The Ninth Circuit subsequently held that Cunningham may be applied retroactively on
collateral review.  Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008).

departure from a longstanding tradition of treating recidivism as 'go[ing] to punishment only.'"); Butler v. Curry, supra, 528 F.3d at 641 (characterizing the principle "that the fact of a prior conviction need not be pleaded in an indictment or proved to a jury beyond a reasonable doubt . . . [as ] the narrow Almendarez-Torres exception to the fact-finding requirements established in the Apprendi line of cases").

b. Analysis

Petitioner summarily contends, without additional argument, only that "the trial court committed Cunningham errors by relying on aggravating circumstances that [were] neither admitted by petitioner nor submitted to a jury." (Dkt. No. 1, at 4.)

The Court of Appeal, the last state court to issue a reasoned decision, denied this contention for the following reasons:

Imposition of the Upper Term

The trial court sentenced defendant to the upper term of eight years on the kidnapping count, finding the aggravating factors outweighed the mitigating factors. The aggravating factors cited by the court were that: (1) defendant had "numerous prior convictions, including [a] prior prison term"; (2) defendant was on parole at the time the current crimes were committed; and (3) defendant's violent conduct caused the victim great bodily injury.

In Cunningham, the United States Supreme Court found that because California's determinate sentencing law (DSL) "allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment." (Cunningham, supra, 549 U.S. at p. __ [166 L. Ed. 2d at p. 876] .)

In supplemental briefing, defendant contends that the trial court committed Cunningham error by relying on aggravating circumstances that were neither admitted by defendant nor submitted to a jury to justify sentencing him to the upper term.

The People argue that (1) defendant forfeited his claim of sentencing error by failing to raise it in the trial court; (2) the trial court properly relied on defendant's prior convictions when it imposed the upper term under Cunningham; and (3) alternatively, any error committed by the trial court was harmless beyond a reasonable doubt.

42

1

2   We shall find that the second argument has merit; therefore, it is
    unnecessary to reach the merits of the People's other two
3   arguments.

4   In People v. Black (2007) 41 Cal. 4th 799 (Black II), the California
    Supreme Court considered whether imposing the upper term
5   violated the defendant's Sixth Amendment right to a jury trial. The
    court concluded that under California's DSL, a defendant is
6   "eligible" to receive the upper term so long as "one aggravating
    circumstance has been established in accordance with the
7   constitutional requirements set forth in Blakely."[25] ( Black II, at p.
    802.)  Thus, if one aggravating circumstance has been established
8   in accordance with Blakely, "the defendant is not 'legally entitled'
    to the middle term sentence, and the upper term sentence is the
9   'statutory maximum'" for Sixth Amendment purposes.  (Black II,
    at p. 813.)

10  The Black II court also noted that the "United States Supreme
    Court consistently has stated that the right to a jury trial does not
11  apply to the fact of a prior conviction[,] [citations] [and that]
    '[r]ecidivism . . . is a traditional, if not the most traditional, basis
12  for a sentencing court's increasing an offender's sentence.'" (Id. at
    p. 818.)  Because Black had a prior conviction, the court reasoned
13  that he was not legally entitled to the middle term and,
    consequently, could be sentenced to the upper term without
14  violating his Sixth Amendment rights.  (Id. at p. 820.)

15  Black II also concluded that when a defendant is "eligible for the
    upper term by virtue of facts that have been established
16  consistently with Sixth Amendment principles, the federal
    Constitution permits the trial court to rely upon any number of
17  aggravating circumstances in exercising its discretion to select the
    appropriate term by balancing aggravating and mitigating
18  circumstances, regardless of whether the facts underlying those
    circumstances have been found to be true by a jury." (Black II,
19  supra, 41 Cal. 4th at p. 813.)

20  Here, one of the factors on which the court relied in imposing the
    upper term was that defendant had "numerous prior convictions,
21  including [a] prior prison term."  Its conclusion is supported by the
    probation report that lists defendant's four prior felony convictions
22  and numerous misdemeanor convictions.  Additionally, the court
    relied on the fact that defendant was on parole at the time the
23

24     [25] "In Blakely, the United States Supreme Court reiterated and applied the rule it outlined
    in Apprendi: '"'Other than the fact of a prior conviction, any fact that increases the penalty for a
25  crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond
    a reasonable doubt.'"' (Blakely, supra, 542 U.S. at p. 301 [159 L. Ed. 2d at p. 412], quoting
26  Apprendi, supra, 530 U.S. at p. 490 [147 L. Ed. 2d at p. 455].)  [Fn. 5 in original text.]

1    current crimes were committed.

2         As in <u>Black II</u>, since defendant had sustained prior convictions, he
     was not legally entitled to the middle term and the trial court
3    properly relied on his prior convictions and prior prison term when
     it imposed the upper term. ( <u>Black II</u>, <u>supra</u>, 41 Cal. 4th at p. 820.)
4    Although the trial court did mention an aggravating circumstance
     unrelated to defendant's prior convictions, <u>Black II</u> makes clear
5    that a trial court does not violate a defendant's constitutional rights
     by relying on aggravating circumstances other than the defendant's
6    recidivism. (<u>Id.</u> at p. 813.)  We conclude that defendant's sentence
     did not violate his Sixth Amendment rights under <u>Cunningham</u> and
7    <u>Blakely</u>.

8    <u>People v. Clemens</u>, <u>supra</u>, 2007 WL 2584998, at *3-4.  (Ldgd. Doc. No. 6.)

9         For the reasons stated by the Court of Appeal, petitioner's sentencing challenge is

10   without merit.  Because petitioner's upper term sentence was based, in part, on the fact of prior

11   convictions that did not need to be proven to a jury, petitioner's sentence comported with

12   constitutional standards.  The denial of this claim by the California courts, based on the reasoning

13   set forth in the Court of Appeal's decision, was not an unreasonable application of clearly

14   established Supreme Court authority.

15   V.  <u>CONCLUSION</u>

16        For the foregoing reasons, IT IS HEREBY ORDERED that:

17        1.  Petitioner's motion (Dkt. No. 30 at 22) for appointment of counsel is denied;

18        2.  Petitioner's motion (Dkt. No. 30) for leave to file an amended application for

19   writ of habeas corpus is denied;

20        3.  Petitioner's application for a writ of habeas corpus (Dkt. No. 1) is denied; and

21        4.  The court declines to issue the certificate of appealability referenced in 28

22   U.S.C. § 2253.

23   DATED:  March 29, 2011

24                                   KENDALL J. NEWMAN
                                     UNITED STATES MAGISTRATE JUDGE
25

26   clem2588.hc.lta.157